CORNELL WOOD PRODUCTS COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*February 7—March 6, 1928.*

*Workmen's compensation: Finding of industrial commission: Cause of death: Review.*

1. A workman clad in wet clothes stood on a wet floor and leaned against a cement post, upon the side of which were electric light sockets, containing no globes but connected by live wires. Suddenly he hollered "Ouch!" and slipped to the floor, and a fellow workman pulled an electric switch that shut off the current to the sockets. There were other circumstances which indicated that the workman had received an electric shock, and a post-mortem disclosed a condition consistent with death from such a cause. *Held,* that a finding of the industrial com-

mission that deceased came to his death from an injury received in the course of his employment was justified. p. 270.

2. On the review of an award of the industrial commission it is only necessary to find that there was some credible evidence from which the commission might make the necessary findings of fact. p. 270.

3. The circuit court can reverse an award of the industrial commission on the ground of the insufficiency of evidence, only when there is no evidence before the commission tending to support the award, since under the statute their findings are final in the absence of fraud. p. 270.

APPEAL from a judgment of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge. *Reversed, with directions.*

Compensation. The *Industrial Commission* entered an award in favor of the widow of the deceased workman, *Alma Sicheneder.* The employer and the insurance carrier brought an action in the circuit court to review the findings and award of the *Commission.* The circuit court entered judgment vacating the award of the *Commission,* and the widow and the *Industrial Commission* appeal.

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* attorneys for the *Industrial Commission,* and *Harold E. Stafford* of Chippewa Falls, attorney for *Alma Sicheneder;* and the cause was argued orally by *Mr. Levitan* and *Mr. Stafford.*

For the respondents there was a brief by *Drought & Drought* of Milwaukee, and oral argument by *James T. Drought* and *Ralph J. Drought.*

CROWNHART, J. The question here presented is: Was there any credible evidence from which the *Industrial Commission* could find the death of the workman resulted from injuries growing out of his work? The *Commission* did not find the exact nature of the injury, but found that the employee came to his death by reason of an injury received by him while he was engaged in performing service for the employer.

It appears that the deceased workman, on the day of his death, was working in a paper mill. He had been working in a stock chest, being a chamber 12 x 15 feet, for storing ground pulp. It was a hot day, August 9th, and particularly hot in the chest, which was without ventilation. He had been in the chest about forty-five minutes and came out of the chest wet with sweat and moisture and much exhausted. He then helped to bring up rags from the chest, by means of a rope which he guided while others pulled it up. Where he stood doing this work it was wet, and his shoes and clothing were wet. A cement post was at his back, and on the side of the post, about 4.2 to 4.6 feet from the floor, were two electric light sockets, containing no globes at the time but connected by live wires. Deceased stood with his back against the post, with one hand on the post. Deceased had been out of the chest about fifteen minutes when suddenly he hollered "Ouch" or "Oh," his hands trembled, his head dropped on his chest, and he slipped to the floor between the beaters. His face and mouth were drawn out of shape. One workman jumped across the aisle and pulled the electric switch that shut off the current to the sockets, and then helped to get the deceased out from between the beaters. He was dead. There was an electric current in the electric sockets that day. One workman testified that a week before he accidentally put his hand on the electric light sockets in the post and got a slight shock, causing him to quickly jerk his hand away. Another workman got a shock some time before from a hook which was used to pull rags from the chest. Still another workman testified that a long time before he got a shock from one of the sockets of sufficient intensity to hold him there until some one pulled his hand away. The manager of the Northern States Power Company testified that he had had experience with electricity, and that the wet floor, wet shoes, and wet clothing would be exceptionally good conditions for electrical conduction. Other experts

testified to the same thing, and that 110 volts might cause death under such conditions,—110 volts was the current at the sockets. Such low voltage might cause death without burning.

A post-mortem examination disclosed conditions from which it appeared that deceased might have come to his death from electric shock. Doctors so testified, but none would testify positively as to the cause of death.

The *Industrial Commission* made exhaustive inquiry into the cause of death, and found deceased came to his death from injury received in the course of his employment.

We think the *Commission* was clearly justified in so finding. The circumstances were very significant from which the reasonable inference followed that death was so caused. Here was a man, thirty-four years of age, previously in good health, working in a wet place, with his clothing and shoes all wet, in close proximity to an electric current which, if the sockets were touched by him, was easily carried to his body. His symptoms were consistent with electric shock, and the post-mortem disclosed a condition consistent with death from electric shock. It is significant that the first thing done by a fellow workman before rendering aid was to turn off the electric current running to the electric light sockets in the post.

We need not further consider the evidence, as it is only necessary to find that there was some credible evidence from which the *Commission* might make the necessary findings of fact. The *Commission* is an expert body dealing with industrial accidents and their causes. Their findings in a case of this kind are entitled to great weight, and the statute makes them final in the absence of fraud. Under the law the circuit court can reverse the award of the *Commission* on the grounds of the insufficiency of the evidence, only when there is no evidence before the *Commis-*

*sion* tending to support it. *Heileman B. Co. v. Industrial Comm.* 161 Wis. 46, 152 N. W. 446. Here the evidence sufficiently supports the findings of the *Commission.*

It follows that the circuit court was in error in vacating the award of the *Commission.*

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment affirming the award of the *Industrial Commission.*